UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. ___22-mj-02351-Louis___

UNITED STATES OF AMERICA,

v.

KENSY GARCIA TORRES,

Defendants.

_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  __ Yes  X  No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  __ Yes  X  No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  __ Yes  X  No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY:  *Christine Hernandez*
_____
CHRISTINE HERNANDEZ
Assistant United States Attorney
Southern District of Florida
Florida Bar: 15349
11200 NW 12th Street
Miami, Florida 33172
Telephone: (305) 715-7641-
Christine.Hernandez@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>KENSY GARCIA TORRES,<br><br>*Defendant* | )<br>)<br>) Case No. 22-mj-02351-Louis<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 1, 2018 through February 28, 2020 in the county of Miami-Dade in the Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code,<br>Sections 1956(a)(1)(B)(i) & 1956(h). | Conspiracy to commit Money Laundering. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Jose De La Sierra, FBI Special Agent
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time.

Date: March 4 2022

*Judge's signature*

City and state: Miami, Florida     Honorable United States Magistrate Judge, Lauren F. Louis
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jose De La Sierra, having been first duly sworn, do hereby depose and state as follows:

1. I have been a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") since January of 2016. I am currently assigned to the Miami Field Office of the FBI. From 2016 to 2018 I was assigned to the Los Angeles Strike Force (LASF) section of the FBI. As a member of the LASF, my investigations focused on the Sinaloa Cartel and the organization's drug trafficking activities. T-III's were the primary investigative method used by the LASF. Prior to joining the FBI, I was a police officer for the Raleigh Police Department in North Carolina for seven years. During my tenure with the Raleigh Police Department, I was assigned to the Gang Suppression Unit and investigated gang related activities that included narcotics violations, weapons violations, and violent crimes. Preceding the Raleigh Police Department, I was a Military Police Investigator with the U.S. Army from 2003 until 2010. As a Military Police Investigator, I investigated various Title 18, United States Code violations that occurred on military installations. During my career in law enforcement, I have specialized in narcotics investigations and received training from the FBI and DEA relating to the methods used by narcotics traffickers to import and distribute narcotics and the laundering of narcotics proceeds. I have been personally involved in numerous investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds. I have conducted phone toll analyses, physical surveillance, and have participated in numerous narcotics investigations that utilized court authorized interceptions of wire communications. As a result of my experience and training, I am familiar with some of the codes narcotics traffickers use when discussing narcotics transactions.

2. This affidavit is submitted in support of a complaint for the arrest of Kensy GARCIA Torres ("GARCIA") for knowingly and willfully conspiring with other known and unknown persons to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), all in violation of 18 U.S.C. § 1956(h).

3. The facts listed in this affidavit are known personally to me or have been provided to me by other law enforcement officers participating in the investigation. The affidavit is provided solely for the purpose of establishing probable cause to arrest GARCIA. Accordingly, this affidavit does not contain all of the facts known to me and other law enforcement concerning this investigation.

4. FBI Miami has been investigating a Honduran Transnational Criminal Organization (TCO) responsible for drug trafficking and money laundering in the United States and Honduras. In October 2018, GARCIA contacted an FBI Confidential Human Source (CHS) seeking assistance to launder millions of dollars in Miami, Florida for the TCO. GARCIA, serving as the broker, introduced the CHS to the financial leader (hereinafter the "FINANCIAL LEADER") of the TCO. Since then, FBI Miami, through covert investigative methods, has conducted a series of money laundering transactions with the TCO using the CHS. FBI Miami received approximately $3 million U.S. dollars from members of the TCO. Through the course of the investigation the TCO with the assistance of GARCIA laundered approximately $2.8 million of illicit proceeds through covert bank accounts.

5. The FINANCIAL LEADER of the TCO is now a cooperating defendant, who has confirmed the below bulk cash transactions were illicit narcotics proceeds. The FINANCIAL LEADER believed GARCIA was aware of the bulk cash being illicit, because of the nature in which the money was being provided and distributed. The FINANCIAL LEADER knew

GARCIA from Honduras as a member of a group of money launderers, associated with various narco-traffickers. In addition, the FINANCIAL LEADER stated GARCIA knew Fredy Donaldo MARMOL Vallejo, the leader of the captioned TCO, as a narcotics trafficker and negotiated the sale of three properties in Honduras for MARMOL in the past.

6. The following are the transactions GARCIA was involved with: Between December 2018 and February 2020, FBI watched as associates of GARCIA delivered bulk cash on 16 different occasions to an FBI CHS, for which GARCIA would receive a commission payment per transaction. Upon the CHS receiving bulk cash, GARCIA would provide payout instructions to the CHS for the various commission payments. In addition to the CHS, GARCIA recruited other individuals to receive her commission payments in bulk cash when she could not receive the payments herself. These individuals would be responsible for either personally delivering the cash commission payments to GARCIA, or wire transferring the commission payments to GARCIA. GARCIA would provide instructions concerning the amount to be disbursed, the method of disbursement, and the name of the intended recipient. On each occasion, FBI secured recordings of the money delivery, deposit, and transfer of funds.

7. Specifically, on or about December 13, 2018, GARCIA contacted the CHS and advised that the FINANCIAL LEADER would soon be contacting the CHS to commence the laundering of money. GARCIA provided the CHS with a breakdown of the commissions and advised that the CHS would profit 1%, the CHS's company would receive 4% and that a total of 7% would be divided between GARCIA, the FINANCIAL LEADER, and a female associate of GARCIA.

8. On December 26, 2018, the CHS received the first delivery of bulk cash from the TCO in Miami. The CHS was delivered $359,249 in a duffel bag. A Broward County Sheriff's

3

Office (BSO) narcotics K-9 (Primus) was utilized to conduct a "sniff" of the bulk cash; the K-9 alerted indicating there was an odor of illegal narcotics emanating from the items presented. The CHS was instructed by the FINANCIAL LEADER to write a check for $155,000 to CRP LMC PROP CO LLC, as well as a wire transfer of $19,110 to CRP. LMC. PROP. CO. LLC.

9. On December 27, 2018, the CHS met with the FINANCIAL LEADER at Lauderdale Marine Center (LMC) in Fort Lauderdale, Florida, and provided the FINANCIAL LEADER a check made out to CRP LMC. The CHS also provided the FINANCIAL LEADER $12,450 in cash as instructed by GARCIA for commission payments. The delivery of the check and cash to the FINANCIAL LEADER was observed by a surveillance team. The monies provided to CRP LMC from a covert FBI bank account were used to purchase a large-scale boat lift that was shipped to Honduras for the TCO.

10. On December 28, 2018, as instructed by GARCIA, the CHS made a deposit at Chase Bank N.A. Account, to a beneficiary listed as A. M. Account #####9811 in the amount of $6,480 (commission payment). The CHS was required to purchase a money order in order to make the deposit. This commission payment was for the percentage that pertained to GARCIA and A.M. from the transactions identified in paragraph 8.

11. On January 2, 2019, the FINANCIAL LEADER coordinated with the CHS, for the CHS to receive the second delivery of bulk cash in the amount of $259,565. That cash was delivered to the CHS within a black suitcase in the lobby of a hotel, along with a piece of note paper with instructions of how the money should be disbursed. A Broward Sheriff's Office narcotics K-9 (Primus) was utilized to conduct a "sniff" of the bulk cash; the K-9 alerted indicating there was an odor of illegal narcotics emanating from the items presented.

12. On January 5, 2019, as instructed by GARCIA, the CHS met with an associate of GARCIA, in Miami, Florida. The CHS provided this associate a total of $16,212 (commission payment for the January 2, 2019, cash delivery). After the meeting, the CHS positively identified the associate from a photograph, confirming that this individual was the associate who received the payment.

13. On January 22, 2019, as instructed by the FINANCIAL LEADER, the CHS retrieved bulk cash from an associate of the FINANCIAL LEADER. That cash totaled $229,200, and was retrieved in Miami, FL. The FINANCIAL LEADER instructed the CHS to wire transfer $205,000 to LEE FELTERMAN AND ASSOCIATES. On January 23, 2019, the FBI wired $205,000 to LEE FELTERMAN AND ASSOCIATES from a covert FBI bank account.

14. On January 25, 2019, the CHS received a fourth delivery of bulk cash, $77,330, within a white bag with "Coca Cola" written in red. Later that day, GARCIA contacted the CHS via WhatsApp and provided the CHS with instructions on where to wire the funds the CHS just received. GARCIA instructed the CHS to wire $69,000 to RIRE in Honduras at Banco Davivienda Honduras S.A. (Roatan Island Real Estate account) and the remainder would be distributed as commission payments. On January 28, 2019, the FBI wire transferred $69,000 to RIRE as instructed by GARCIA.

15. On January 29, 2019, as instructed by GARCIA, the CHS met with an associate of GARCIA in Miami, FL. The CHS provided this individual with $18,780 in commission payments, which represented the commission payment for funds laundered in paragraphs 13 and 14.

16. On February 20, 2019, the CHS received a fifth delivery of bulk cash, a duffel bag containing $341,010. Of this amount, the CHS was instructed to wire transfer $65,000 to RIRE, and $150,000 to Z.B. On February 22, 2019, as instructed by the FINANCIAL LEADER, the FBI,

through a covert FBI bank account, sent the two wire transfers as instructed. On February 28, 2019, GARCIA instructed the CHS to meet with an associate of GARCIA and deliver the commission payments owed to GARCIA from these two wire transfers. As instructed by GARCIA on this date, the CHS provided the associate $15,050 in cash as a commission payment ultimately destined for GARCIA.

17. On August 26, 2021, an associate of GARCIA, who would accept commission payments on her behalf, stated to law enforcement that GARCIA had initially told this associate that the money was the result of real estate sales. The associate, also a realtor, did not believe the nature of these transactions to be typical of normal real estate transactions. On August 21, 2021, GARCIA called this associate and stated that the police had seized her house in Honduras because the Honduran authorities believed GARCIA to be laundering money.

18. Based on information contained within this affidavit, I respectfully submit there is probable cause for the issuance of a criminal complaint charging Kensy GARCIA Torres with knowingly and willfully conspiring with other known and unknown persons to launder money, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), all in violation of 18 U.S.C. § 1956(h).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Jose De La Sierra, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of
Fed. R. Crim. P. 41 by Face Time this __4__ day of March 2022.

HONORABLE LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

6